754 S.E.2d 900

Gerald SMITH, Petitioner,

v.

STATE of South Carolina, Respondent.

Appellate Case No. 2010–164866.
No. 5194.

Court of Appeals of South Carolina.

Heard Oct. 15, 2013.
Decided Feb. 5, 2014.
Rehearing Denied March 21, 2014.

Robert M. Pachak, of Columbia, for Petitioner.

Attorney General Alan Wilson, Assistant Deputy Attorney General David A. Spencer, Assistant Attorney General Megan Elizabeth Harrigan, all of Columbia, for Respondent.

## ON WRIT OF CERTIORARI

WILLIAMS, J.

Petitioner Gerald Smith ("Smith") appeals the post-conviction relief (PCR) court's order denying his application for PCR based on ineffective assistance of counsel during his guilty plea. We reverse the PCR court's order, vacate Smith's sentence, and remand for resentencing.

### FACTS/PROCEDURAL HISTORY

Smith was indicted for murder.[1] Pursuant to a negotiated plea agreement, Smith pled guilty to the lesser-included offense of voluntary manslaughter in exchange for testifying against his codefendant. As part of the plea agreement, the State agreed to remain silent as to sentencing. However, this part of the plea agreement was not put on the record at the plea hearing, in part because Smith's sentencing was to be deferred until after his codefendant's trial.[2]

During the plea colloquy before the Honorable Clifton Newman ("the plea court"), Smith stated he understood the sentence for voluntary manslaughter was between two and thirty years' imprisonment and a voluntary manslaughter conviction was classified as a "most serious offense." Additionally, the plea court asked Smith whether "anyone promised [Smith] anything to get him to plead guilty to [manslaughter]." Smith responded the only promise was to reduce the charge from

---

1. Although Smith's account of what transpired changed several times, he and his codefendant were accused of bludgeoning the victim to death with a piece of rebar in the victim's mobile home after a dispute over a drug deal.

2. We are aware of the supreme court's holding in *State v. Thrift* that appellate review of a plea agreement is limited to the terms that are fully set forth in the record and that neither the State nor the defendant can enforce plea agreement terms which do not appear on the record before the trial judge who accepts the plea. 312 S.C. 282, 296–97, 440 S.E.2d 341, 349 (1994). However, we review Smith's PCR claim consistent with the supreme court's consideration of the same issue in *Thompson v. State,* 340 S.C. 112, 531 S.E.2d 294 (2000).

murder to voluntary manslaughter, which plea counsel confirmed. After Smith pled guilty, the solicitor provided the plea court with the facts of the case, summarized Smith's previous statements,[3] and proffered Smith's testimony on the record. At the conclusion of the hearing, the plea court retained jurisdiction and deferred sentencing until the solicitor prosecuted Smith's codefendant.

At the subsequent sentencing hearing before the Honorable Reginald Lloyd ("the sentencing court"), the solicitor put the negotiated plea agreement between the State and Smith on the record. The solicitor indicated the agreement (1) "reduce[d] the charge from murder to manslaughter" and (2) deferred sentencing to allow Smith to testify at his codefendant's trial for murder. The solicitor acknowledged Smith suffered drug-related memory impairment but claimed Smith "continually minimized his role" in the death of the victim. Furthermore, the solicitor indicated counsel for Smith's codefendant filed a motion to disqualify Smith from testifying at his codefendant's trial, which caused the solicitor major concerns about using Smith's testimony against his codefendant. The solicitor stated the State could not proceed against Smith's codefendant for murder because Smith failed to truthfully articulate his role in the murder. As a result, the State was forced to mitigate the codefendant's charge to accessory after the fact of murder. The solicitor then requested the sentencing court impose the maximum sentence upon Smith.

Plea counsel neither objected to the solicitor's sentencing request nor withdrew Smith's guilty plea. Instead, plea counsel requested the sentencing court give Smith credit for the time he had served and further asked the sentencing court to impose a ten-year sentence. The sentencing court initially sentenced Smith to twenty-seven years, taking into consideration Smith's efforts to help the solicitor as well as the

---

3. In the first statement to police, Smith claimed no involvement in the victim's murder. In his second account, Smith said he drove his codefendant to the victim's mobile home but did not go inside the mobile home. However, in his third account, Smith stated he went inside the home. In Smith's fourth statement to police, Smith alleged his codefendant started an argument with the victim because the victim would not sell the codefendant more drugs. In that statement, Smith admitted to hitting the victim over the head with a piece of rebar but stated his codefendant actually killed the victim.

problems Smith caused in his codefendant's case. Subsequently, plea counsel moved for the sentencing court to reconsider the length of Smith's sentence, and the sentencing court reduced Smith's sentence to twenty-four years' imprisonment.

Smith appealed his conviction, and this court dismissed the appeal on April 11, 2008. *See State v. Smith*, Op. No. 2008–UP–226 (S.C. Ct.App. filed April 11, 2008). Smith then filed an application for PCR, alleging ineffective assistance of counsel.

At the PCR hearing, Smith argued his plea counsel was ineffective because she failed to object or bring his plea agreement to the sentencing court's attention when the solicitor requested the court impose the maximum sentence. Smith claimed if he cooperated with the solicitor in testifying against his codefendant, the solicitor would reduce his charge to voluntary manslaughter. In addition, the solicitor would agree to an open plea and would remain silent as to sentencing, so Smith would likely receive "somewhere between eight and ten years...." Smith stated he met with the solicitor for approximately four hours to prepare to testify at his codefendant's trial. Smith argued the solicitor knew he had drug-related memory issues from the beginning and that he had problems recalling details during his meeting with the solicitor because the incident happened three years prior. Smith told the PCR court he was shocked when the solicitor recommended the maximum sentence. Smith stated that had he known the solicitor was going to recommend the maximum sentence, he would have withdrawn his plea and let the jury "decide [his] fate."

Plea counsel also testified at the PCR hearing. She stated the solicitor's official plea offer was for voluntary manslaughter. She advised Smith that he could be sentenced from anywhere between two to thirty years, but she would request ten years because he would be assisting the solicitor. Plea counsel further testified she had done two previous pleas involving similar circumstances in front of the sentencing judge, and he had given the defendants about ten years when the murder involved a drug dealer, much like Smith's case. Moreover, plea counsel testified the solicitor was always aware Smith had memory issues because she told the solicitor about

Smith's memory problems on the day the solicitor made the plea offer. Furthermore, plea counsel stated no one with the solicitor's office ever told her Smith's memory problems would be an issue.

Plea counsel testified she was surprised when the solicitor requested the sentencing court impose the maximum sentence at the sentencing hearing. She testified she recalled thinking the solicitor did not abide by the State's promise to remain silent because Smith was unable to uphold his end of the plea deal. Additionally, plea counsel acknowledged she made a mistake in failing to object or put on the record the portion of the agreement that the solicitor would remain silent on sentencing. She stated she was "a little taken aback" when the solicitor recommended the maximum sentence. Although she thought about having Smith withdraw his plea, she testified she had not come to court prepared to try the case that day.

After the hearing, the PCR court issued an order denying and dismissing Smith's application for PCR. Smith filed a motion pursuant to Rule 59(e), SCRCP, which the PCR court denied. Counsel for Smith filed a petition for a writ of certiorari. This court granted Smith's petition to review the following issue:

> Did the PCR court err in failing to find plea counsel was ineffective for not objecting when the solicitor recommended Smith be sentenced to the maximum term of imprisonment in violation of the negotiated plea agreement with the State?

## STANDARD OF REVIEW

In a PCR proceeding, the burden is on the petitioner to prove the allegations in the application. *Thompson v. State*, 340 S.C. 112, 115, 531 S.E.2d 294, 296 (2000). In reviewing the PCR court's decision, an appellate court is concerned only with whether any evidence of probative value exists to support that decision. *Smith v. State*, 369 S.C. 135, 138, 631 S.E.2d 260, 261 (2006). Thus, an appellate court gives great deference to the PCR court's findings of fact and conclusions of law. *Porter v. State*, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). However, a PCR court's findings will not be upheld if no probative evidence exists to support those findings. *Thompson*, 340 S.C. at 115, 531 S.E.2d at 296.

## LAW/ANALYSIS

Smith argues plea counsel was ineffective for failing to object when the solicitor recommended the sentencing court impose the maximum sentence. We agree.

Trial counsel must provide reasonably effective assistance under "prevailing professional norms." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Reviewing courts presume counsel was effective. *Id.* at 690, 104 S.Ct. 2052. Therefore, to receive relief, a PCR applicant must prove: (1) counsel failed to render reasonably effective assistance under prevailing professional norms; and (2) the deficient performance prejudiced the applicant's case. *Id.* at 687, 104 S.Ct. 2052. Prejudice is defined as a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700, 104 S.Ct. 2052.

Smith must first establish his plea counsel's failure to object "fell below prevailing professional norms." We find Smith established counsel's performance was deficient and rely on the case of *Thompson v. State,* 340 S.C. 112, 116, 531 S.E.2d 294, 296 (2000), to support our conclusion. In *Thompson,* plea counsel failed to object after the solicitor recommended the maximum sentence in violation of the plea agreement. 340 S.C. at 115, 531 S.E.2d at 296. Thompson was indicted for murder and pled guilty to voluntary manslaughter. *Id.* at 113, 531 S.E.2d at 295. Thompson testified at the PCR hearing that he chose to plead guilty because he was under the assumption the solicitor was not going to make a sentencing request or recommendation. *Id.* at 114, 531 S.E.2d at 295. In addition, Thompson's attorney testified she told him prior to the plea the solicitor was not going to make a sentencing recommendation. *Id.* Thompson's attorney also confirmed to the plea court that the solicitor had correctly and completely stated the plea agreement and there was nothing further that needed to be added regarding the plea negotiations. *Id.* at 116, 531 S.E.2d at 296. Our supreme court

found there was a reasonable probability that Thompson would not have pled guilty but for his attorney's ineffective assistance because he entered his guilty plea in reliance on the sentencing range and the solicitor's agreement not to make any sentencing recommendations. *Id.* at 117, 531 S.E.2d at 297.

Like the attorney in *Thompson,* we find plea counsel's failure to object fell below prevailing professional norms. At the PCR hearing, plea counsel testified she told Smith the solicitor was not going to make a sentencing recommendation. Plea counsel admitted she made a mistake in failing to put all of the terms of the plea agreement on the record and in failing to object when the solicitor requested the maximum sentence. Further, plea counsel acknowledged she did not object when questioned by the sentencing court as to whether the solicitor had correctly and completely stated the plea agreement. Based on the foregoing, we find plea counsel's conduct to be deficient.

To establish a claim for ineffective assistance of counsel, Smith must also be prejudiced by his counsel's deficient performance. *See Strickland,* 466 U.S. at 690, 692, 104 S.Ct. 2052 (holding a PCR applicant must prove counsel's deficient performance and resulting prejudice to establish a claim for ineffective assistance of counsel). We find the record shows that but for his plea counsel's deficient performance, Smith would not have pled guilty but would have insisted on going to trial. First, the record indicates both plea counsel and Smith intended to go to trial on the murder charge before the solicitor offered Smith the plea deal. It was only when the solicitor offered to mitigate the charge to voluntary manslaughter and agreed to remain silent on sentencing in exchange for his cooperation that Smith changed his mind about going to trial and pled guilty. Smith presented probative evidence that he attempted to uphold his end of the plea agreement by proffering his testimony at the plea hearing and by meeting with the solicitor for more than four hours on the eve of his codefendant's trial. Although the State argued Smith failed to uphold his end of the bargain, plea counsel testified she explained to the solicitor that Smith had a memory problem. Further, no one at the solicitor's office ever indicated Smith's memory issues would be a problem,

even after his proffered testimony and his codefendant's motion to disqualify.

Because Smith presented probative evidence that the solicitor's promise to remain silent at sentencing was a material term of the plea agreement, we likewise find there is enough evidence to demonstrate Smith would not have pled guilty if he had known the solicitor was going to make a sentencing recommendation. Accordingly, we hold plea counsel's failure to object amounted to ineffective assistance of counsel. *See Jordan v. State,* 297 S.C. 52, 54, 374 S.E.2d 683, 684–85 (1988) (granting PCR when defendant pled guilty based on belief that solicitor would not oppose or recommend probation and finding defense attorney's failure to draw the plea court's attention to solicitor's violation of plea agreement fell below prevailing professional norms).

## CONCLUSION

For the foregoing reasons, we **REVERSE** the PCR court's denial of relief, **VACATE** Smith's sentence for voluntary manslaughter, and **REMAND** for resentencing on this charge consistent with the original plea agreement.

SHORT and THOMAS, JJ., concur.